UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ERIC ANGELETTI                                    CIVIL ACTION

VERSUS

GERALD LANE, ET AL.                        NO.: 12-00503-BAJ-SCR

RULING AND ORDER

Before the Court is **Defendants' Motion for Summary Judgment (Doc. 68)**,
filed by Defendants Gerry Lane Enterprises, Inc. and Eric Lane[1] (collectively
"Defendants"), seeking an order from this Court granting summary judgment,
pursuant to Federal Rule of Civil Procedure 56, and dismissing Plaintiff Eric
Angeletti's ("Angeletti") claims. Angeletti opposes the motion. (Doc. 73.) Defendants
filed a reply memorandum. (Doc. 81.) Oral argument is not necessary. Jurisdiction
is proper, pursuant to 28 U.S.C. § 1331. For the reasons stated herein, Defendants'
motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Defendant Eric Lane is named as a Defendant in his capacity as the Representative of the
Succession of Gerald R. Lane. (Doc. 49.)

# I.    Background

## A.    Angeletti's First Amended Complaint[2]

Angeletti filed this employment discrimination lawsuit pursuant to Title VII of the Civil rights Act of 1964, 42 U.S.C. § 2000, *et seq.* ("Title VII"), 42 U.S.C. § 1981; and the Louisiana Employment Discrimination Law, La. R.S. § 23:301, *et seq.* Angeletti alleges that Defendants discriminated against him on the basis of his national origin, race, and sex and constructively discharged him from his sales associate position at Gerry Lane Chevrolet in Baton Rouge, Louisiana. Specifically, Angeletti alleges that dealership owner, Gerald R. Lane, created a hostile work environment in which Angeletti was subjected to discriminatory comments, name-calling, abusive language, racial and ethnic slurs, and unwelcome physical contact. Angeletti further alleges that Defendants retaliated against him in response to his complaints of unlawful discrimination. Angeletti's Complaint also alleges that Gerald R. Lane's actions amounted to intentional infliction of emotional distress. Angeletti further alleges a claim for assault and battery, pursuant to La. Civ.Code art. 2315, and a claim for unpaid wages under La. Rev. Stat. § 23:631, *et seq.*

---

[2] Angeletti originally filed this lawsuit along with ten other current and former employees of Gerry Lane Enterprises, Inc. (Doc. 1.) Subsequently, the Court issued an order requiring the Clerk of Court to sever the claims into eleven separate lawsuits, and requiring each plaintiff to file an amended complaint. (Doc. 4.) Accordingly, Angeletti filed his First Amended Complaint on September 11, 2012. (Doc. 6.)

## B.    Undisputed Facts[3]

- Defendant Gerry Lane Enterprises operates as Gerry Lane Chevrolet, an automobile dealership in Baton Rouge.

- Prior to his May 2013 passing, Defendant Gerald R. Lane owned a majority interest in Gerry Lane Enterprises.

- Angeletti is an African-American male born in the Ninth Ward neighborhood of New Orleans.

- Angeletti attended middle school and high school in Baton Rouge and lived for a time with his father in California.

- Angeletti is of Italian heritage through his paternal grandfather.

- In January 2010, Angeletti began working for Gerry Lane Enterprises selling cars.

- As part of [his initial orientation] process, Angeletti received various policies governing the terms of his employment.

- Gerry Lane Enterprises was Angeletti's first position in automotive sales.

- In automotive sales, income is directly tied to sales production.

- In his first year, Angeletti made less than $30,000.00.

- In 2011, Angeletti received a significant bonus from General Motors for achieving a certain number of vehicle sales.

- Angeletti was not terminated or reprimanded as a result of the [2012 workplace] incident with his wife.

- On April 20, 2012, Angeletti's counsel sent a letter to the Company and Gerald R. Lane indicating that Angeletti intended to pursue legal claims for harassment and discrimination.

---

[3] In accordance with Rule 56.1 of the Local Rules of the United States District Court for the Middle District of Louisiana, Defendants submitted a statement of undisputed material facts. (Doc. 68-2); L.R. 56.1. In opposition, Angeletti submitted a response to Defendants' statement of undisputed material facts. (Doc. 73-2); Fed.R.Civ.P. 56(c); L.R. 56.2. Accordingly, only certain material facts are deemed admitted for purposes of this ruling and order. L.R. 56.2.

- Wayne Garafola never made any sexual advances toward Angeletti and never touched him improperly.

- The Dealership has hired numerous African-Americans to work in sales since Angeletti's resignation.

- Gerald R. Lane provided Cedric Patton with an ownership interest in his business operations and put him in charge of the Chevrolet and Buick GMC dealerships.

- The Dealership provides demonstrator vehicles (demos) to those employees who qualify.

- Employees who receive demos are responsible for paying for any damages.

- The Dealership has on numerous instances, both before and after the filing of these legal claims, required employees to pay for damage caused to a demo while entrusted to them.

- The Dealership made numerous deductions from the deposits and pay of sales employee Terry Bell for demonstrator vehicle damages while in his care.

- All employees are told not to congregate, and groups of employees will be broken up if Gerry Lane management sees it occurring.

- Sales employees are required to report to daily sales meetings on time unless they are otherwise excused.

- During the past five years, there were many instances where Gerald R. Lane said "burn him" when a sales employee reported late to a meeting.

- This happened both before and after the receipt of the demand letters from the attorney representing Angeletti.

## C.    Defendants' Motion for Summary Judgment

As to the instant motion, Defendants seek an order from this Court dismissing

Angeletti's claims. Defendants contend that Angeletti has abandoned his sexual

harassment claims. Defendants further argue that Angeletti cannot point to sufficient

evidence to establish his discrimination claims on the basis of his national origin or race. Defendants also contend that Angeletti cannot point to sufficient evidence to establish his constructive discharge, retaliation, intentional infliction of emotional distress, assault and battery, or unpaid wages claims. Accordingly, Defendants argue that summary judgment is warranted.

In opposition, Angeletti argues that there genuine disputes of material fact that preclude summary judgment in favor of Defendants. Specifically, Angeletti contends that there are that there genuine disputes of material fact related to his national origin and race discrimination claims, as well as his constructive discharge, retaliation, intentional infliction of emotional distress, and assault and battery claims. Angeletti fails to make any argument, or point to any evidence, in support of his sex discrimination or unpaid wages claims.

## II.    Standard of Review

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party carries its burden of proof under Rule 56, the opposing party

must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323; *Liquid Air Corp.*, 37 F.3d at 1075.

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). The court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion for summary judgment. *International Shortstop, Inc.*, 939 F.2d at 1263.

## III. Analysis

### A. Angeletti's Federal and State Law Discrimination Claims Against Individual Supervisors or Fellow Employees

In support of the motion, Defendants contend that Angeletti is precluded from asserting federal or state law discrimination claims against individual supervisors. Rather, relief under Title VII or the Louisiana Employment Discrimination Law is only available against an employer. Angeletti failed to present any argument, or point to any evidence, in opposition to Defendants' argument.

It is well established that relief under Title VII is only available against an employer, and not against an individual supervisor or fellow employee. *Umoren v. Plano Indep. Sch. Dist.*, 457 F. Appx. 422, 425 (5th Cir. 2012) (quoting *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n. 8 (5th Cir. 2003)). It is also well established that "[L]ouisiana's antidiscrimination law provides no cause of action against individual employees, only against employers." *Mitchell v. Tracer Construction Co., et al.*, 256 F. Supp. 2d 520, 525 (M.D. La. 2003); *Johnson v. Acosta*, No. 10-1756, 2010 U.S. Dist. LEXIS 109032, at *15 (E.D. La. Oct. 12, 2010) ("It is equally well established that 'Louisiana's antidiscrimination law provides no cause of action against individual employees, only against employers.'"); *see also* La. R.S. 23:303(A). Accordingly, Defendants' request that the Court dismiss Angeletti's federal and state law discrimination claims against Gerald R. Lane, or any other individual supervisor or fellow employee, is **GRANTED**.

**B.     Angeletti's Hostile Work Environment Claim on the Basis of His Sex**

In his First Amended Complaint, Angeletti alleges that Gerald R. Lane's personal assistant Wayne Garafolo "is openly homosexual and constantly makes lewd sexual innuendo and advances at the sales staff[,] including Angeletti[,] by making inappropriate comments about sex and penises." (Doc. 6, ¶ 18.) When questioned about his sexual harassment claim by counsel for Defendants during his deposition, Angeletti testified as follows:

Q:     Are you - Is it your understanding that you're alleging that Wayne Garafola sexually harassed you when you worked there?

A:     He has sexual conversations that I didn't want to hear about other people.  He didn't touch me or -

Q:     He never made any advances toward you?

A:     He told me I was fat and ugly, he's not attracted to me, but look at the legs on him.  So therefore, yes, that it - that's not - that's uncalled for at work.  I didn't go there to do that.

Q:     So this is language you didn't appreciate?

A:     Not at all.  And I told him too.

Q:     But you didn't, you didn't interpret or take it as him making sexual advances toward you; is that correct?

A:     What do you mean?  He told me that I was fat and he wasn't attracted to me, so.

Q:     So it's the opposite of that, right?

A:     Yeah.  At the same time, it's still inappropriate and uncomfortable for me talking about somebody else's penis -

Q:     I understand.  I understand that.

A:      - and their legs and, you know, stuff like that.

Q:      Did he ever make any comments about your penis or any part of your body other than your legs?

A:      No.

Q:      Was it your legs that he was talking about?

A:      No, he was not talking about my legs.

(Doc. 68-6, pp. 149-150.)

In support of the motion, Defendants contend that Angeletti disavowed his sexual harassment claims during his deposition. Alternatively, Defendants argue that Angeletti cannot point to sufficient evidence in the record to establish a genuine issue of material fact from which a jury could conclude that Angeletti was subjected to a hostile work environment on the basis of his sex.

Angeletti failed to present any argument, or point to any evidence, in opposition to Defendants' argument. Indeed, in his response to Defendants' statement of undisputed material facts, Angeletti did not dispute that "Garafola never made any sexual advances toward[ ] Angeletti and never touched him improperly." (Doc. 68-2, p. 5; Doc. 73-2, p. 5.) Accordingly, it is reasonable for the Court to conclude that Angeletti has abandoned his sexual harassment claim at the summary judgment stage. *See Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 113 (5th Cir. 2010) ("The fact that [plaintiff] raised this argument in its complaint will not save it from waiver if it failed to present this argument in its summary judgment motions.") (citation omitted); *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001); *Penrod*

9

*v. Bank of N.Y. Mellon*, 824 F. Supp. 2d 754, 763 (S.D. Tx. 2011) ("Plaintiffs' summary judgment response has abandoned the claim, offering no briefing on the subject."). As such, Defendants' request that the Court dismiss Angeletti's claim that he was subjected to a hostile work environment claim on the basis of his sex is **GRANTED**.

### C. Angeletti's Wage Payment Claim

Angeletti fails to present any argument in opposition to Defendants' request that the Court dismiss his claim under La. R.S. § 23:631. *See* Doc. 73-1, p. 2 ("Mr. Angeletti also does not challenge Defendant[s'] position on the La. R.S. § 23:631 wage claim.") Accordingly, Defendants' request that the Court dismiss Angeletti's claim under La. R.S. § 23:631 is **GRANTED**.

### D. Angeletti's Hostile Work Environment Claim on the Basis of His National Origin

In order to survive summary judgment, Angeletti must present sufficient evidence to establish that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on national origin; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[4] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). Here, Defendants contend that Angeletti

---

[4] However, where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case. *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 353 (5th Cir. 2001).

cannot establish that the harassment complained of affected a term, condition, or privilege of his employment.

In order for harassment to affect a term, condition, or privilege of employment, it must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). For harassment to be sufficiently severe or pervasive to alter the conditions of employment, the conduct complained of must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain v. Wal-Mart Stores of Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008); *see also Harris*, 510 U.S. at 21-22. Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. *Harris*, 510 U.S. at 21-22. To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating; (4) whether it interferes with an employee's work performance. *Id.* at 23.

In support of the motion, Defendants argue that the only evidence Angeletti can point to in support of his claim for national origin harassment is that Gerald R. Lane called him a "dago" on three or four specific occasions. Defendants further contend that Angeletti did not know what the term "dago" meant for, at least, the first twenty-one months of his employment. Accordingly, Defendants argue that Angeletti cannot

establish that the alleged harassment was objectively or subjectively offensive, and thus, severe or pervasive enough to alter the conditions of his employment.

Angeletti does not dispute that, during his deposition, he could only identify three or four specific occasions during which Gerald R. Lane used the word "dago." Angeletti argues, however, that Gerald R. Lane called him a "dago" more than 200 times during his employment. In support of this argument, Angeletti points to his deposition, during which he testified that Gerald R. Lane called him a "dago" "every day." (Doc. 68-6, pp. 16-17; Doc. 73-5, pp. 11, 12, 14.) Angeletti further concedes that he did not know the word "dago" was an ethnic slur for more than two thirds of his employment. He, argues, however, that he was subjected to the term for another eight months after he understood the disparaging nature of the word. In support of this argument, Angeletti points to his deposition, during which he testified that once a co-worker explained what the term "dago" meant, he would "cringe" every time Gerald R. Lane said the word. (Doc. 68-6, pp. 130-131.)

Applying the totality of the circumstances test, the Court concludes that Angeletti has presented sufficient evidence to create an issue of fact as to whether the harassment complained of affected a term, condition, or privilege of employment. First, Angeletti has presented sufficient evidence to establish that the harassment complained of was objectively offensive. During his deposition, Angeletti specifically identified three occasions during which Gerald R. Lane referred to him, or him and another employee, as a "dago" or "dagos." (Doc. 68-6, pp. 128-135.) Angeletti further testified that Gerald R. Lane called him a "dago" "over 200 times" during his twenty-

nine-month term. (Doc. 68-6, pp. 16-17.) According to Angeletti, Gerald R. Lane called him a "dago" on his first day of employment, and "every day" thereafter. (Doc. 73-5, pp. 11, 12, 14.) His deposition testimony is supported by the testimony of three coworkers, who testified that Gerald R. Lane called Angeletti "dago" in sales meetings, commented to Angeletti that "[y]ou know, you're just a dago," and "[v]ery rarely [ ] talked to Angeletti without calling him a dago." *See, e.g.*, Doc. 73-6, pp. 10-12; Doc. 73-7, pp. 9-10; Doc. 73-8, p. 3. Angeletti also testified that "people would laugh at [him]" when Gerald R. Lane called him a "dago." (Doc. 68-6, p. 130.) Further, Angeletti's failure to point to evidence to show that Gerald R. Lane's use of the ethnic slur interfered with his work performance is not dispositive. *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007) ("Whether [the plaintiff] lost sales as a result of the alleged harassment is certainly relevant to his hostile work environment claim; but it is not, by itself, dispositive.").

Second, Angeletti has presented sufficient evidence to establish that the harassment complained of was subjectively offensive. Angeletti concedes that he did not know the meaning of the ethnic slur the first twenty-one months of his employment. However, during his deposition Angeletti testified that, after a coworker explained the disparaging nature of the word, Gerald R. Lane continued refer to Angeletti as "dago" and tell him "you aren't shit dago." (Doc. 68-6, pp. 129-131.) Angeletti's testimony is supported by the testimony of coworker Marc DiLeo, who testified that he explained the disparaging nature of the word to Angeletti sometime after his hire in September 2001, and that Gerald R. Lane referred to Angeletti as

"dago" on more than one occasion. (Doc. 73-6, p. 10-12.) In other words, the Court finds that Angeletti has presented sufficient to establish that he perceived Gerald R. Lane's use of the word "dago" to be offensive for the final eight months of his twenty-nine-month term.

In sum, the Court finds that Angeletti has raised a dispute of material fact as to whether the harassment complained of was severe or pervasive enough to affect a term, condition, or privilege of his employment. Indeed, the Fifth Circuit has found that a regular pattern of frequent verbal ridicule or insults sustained over time can constitute sever or pervasive harassment sufficient to violate Title VII. *WC&M Enters., Inc.*, 496 F.3d at 400 ("Under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim as well as a continuous pattern of much less severe incidents of harassment.") (citation omitted); *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000) (holding that African-American employees who were subjected to a variety of racial slurs over three-year period raised fact issue as to whether slurs were sufficiently severe or pervasive to violate Title VII); *Jackson v. Federal Express Corp.*, No. 03-cv-2341-D, 2006 U.S. Dist. LEXIS 10324, at *35-39 (N.D. Tx. March 14, 2006) (holding that evidence presented to show that the plaintiff endured racial slurs over "several years" and on a "daily basis" was sufficient to raise a fact issue as to severe and pervasive harassment). Accordingly, Defendants' request that the Court dismiss Angeletti's hostile work environment claim on the basis of his national origin is **DENIED**.

E.     Angeletti's Hostile Work Environment Claim on the Basis
        of His Race

In order to survive summary judgment, Angeletti must present sufficient
evidence to establish that: (1) he belongs to a protected group; (2) he was subjected to
unwelcome harassment; (3) the harassment complained of was based on race; (4) the
harassment complained of affected a term, condition, or privilege of employment; (5)
the employer knew or should have known of the harassment in question and failed to
take prompt remedial action.[5] *Ramsey*, 286 F.3d at 268 (citations omitted). In support
of the motion, Defendants essentially argue that Angeletti cannot establish that the
harassment complained of was based on race. Rather, Gerald R. Lane subjected all
employees to the same treatment. Defendants further contend that Angeletti cannot
establish that the harassment complained of was severe and pervasive enough to affect
a term, condition, or privilege of his employment.

In opposition, Angeletti points to his deposition, in which he testified that
Gerald R. Lane referred to him as "Ninth Ward Katrina trash" or "N.O. Trash" (Doc.
68-6, p. 53; Doc. 73-9, p. 1); referred to the car dealership as his "plantation" (Doc. 68-6,
p. 49); told Angeletti that "as long as you work for me, I own your ass" (Doc. 73-5, p.
21); told Angeletti that "a blind runaway slave could sell more" cars than him more
than five times (Doc. 73-5, pp. 20, 43); told Angeletti that a "blind monkey" could sell
more cars (Doc. 68-6, p. 24); called Angeletti a "motherfucker" and "sonofabitch,"

_____

[5] As noted above, where the harassment is allegedly committed by a supervisor with immediate
authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima
facie* case. *Celestine*, 266 F.3d at 353.

cursed at Angeletti in front of customers, and told him to "get his ass to work" when he did not sell cars (Doc. 68-6, pp. 41, 59; Doc. 73-5, p. 17); told Angeletti and his coworkers that they "looked like a bunch of monkeys under the tree" (Doc. 68-6, p. 136); said "I bet y'all think Black Friday [is] for ya'll, for black people" to Angeletti and other African American employees, and then turned to a dark-complected African American employee and said, "especially you, I bet you do a lot of shopping on Black Friday" (Doc. 68-6, p. 66); justified his accusation that an African American employee lied about sales because the employee is the "same color as Obama" (Doc. 68-6, p. 67); referred to a finance manager's Native American heritage as being from the "nigga-ho tribe" (Doc. 68-6, pp. 40-41; Doc. 73-10, p. 2); and said, "Am I being a racist? You're damn right. I earned the right to be." to Angeletti and other employees (Doc. 73-5, p. 17). Angeletti also points to the deposition testimony of other current and former employees who testified that Gerald R. Lane "asked [Angeletti] in the sales meeting [ ] when he was going to take his trash back to New Orleans" (Doc. 73-7, p. 8); "would scream and curse in front of everybody at Eric Angeletti. He would definitely treat him a lot harder than he would me and talk down to him in front of everybody way more than he would me or some of the other coworkers." (Doc. 73-7, p. 9); called Angeletti "Ninth Ward trash" (Doc. 73-7, p. 9); told Angeletti and other African American employees who were standing in a group on the sales floor, "If I wanted to see the goddamn ghetto, I'd go behind the dealership." (Doc. 73-6, pp. 5-6); and exclaimed, "And if ya'll think I'm a racist, well, you're damn right I am. I've earned the right to be." to approximately twenty employees during a sales meeting (Doc. 73-6, p. 14). Angeletti also points his

deposition, as well as the depositions of coworkers, in which each of the men testified that Gerald R. Lane touched the faces of African American employees to ensure that they were clean shaven, but not the faces of white employees. (Doc. 73-5, p. 48; Doc. 73-12, pp. 4, 6; Doc. 73-13, p. 4.)

Viewing the facts in the light most favorable to Angeletti, the Court finds that he has presented sufficient evidence to establish a genuine dispute of material fact from which a jury could conclude that the harassment complained of was based on race. Such a conclusion is underscored by the deposition testimony of Angeletti's white coworker, who testified that he "never heard [Gerald R. Lane] talk to the white salespeople like the black salespeople. Definitely. He never said the same things to us that he would say to the others," and the deposition testimony of another white coworker who testified that "[Gerald R. Lane] was making racial comments on a daily basis." (Doc. 73-7, p. 3; Doc. 73-6, p. 13.)

Viewing the facts in the light most favorable to Angeletti, the Court also finds that he has presented sufficient evidence to establish a dispute of material fact from which a jury could conclude that the harassment was severe and pervasive. Indeed, the evidence presented by Angeletti suggests more than just a handful of racially-charged comments. Rather, the evidence presented supports the conclusion that Gerald R. Lane subjected Angeletti to race-based insults, ridicule, and intimidation on a regular basis. *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007) ("Frequent incidents of harassment, though not severe, can reach the level of 'pervasive,' thereby altering the terms, conditions, or privileges of employment such

17

that a hostile work environment exists.").

Further, where, as here, the plaintiff has presented evidence of a pattern of race-based harassment, it is appropriate for the Court to consider incidents of non-race-based harassment. *Compare WC&M Enters, Inc.*, 496 F.3d at 400 (determining that a fact finder could reasonably conclude a coworker's frequent banging on the glass partition of the plaintiff's office was motivated by animus related to the plaintiff's national origin because the same coworker had repeatedly called the plaintiff "Arab" for approximately one year), *with Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012) (declining to consider incidents of harassment not based on race where there was no evidence the conduct was part of a pattern of race-based harassment). The Court finds that when evidence of Gerald R. Lane's race-based harassment of Angeletti is taken together with evidence of the non-race-based harassment, it is reasonable to conclude that the harassment complained of was severe or pervasive enough to affect a term, condition, or privilege of Angeletti's employment. Accordingly, Defendants' request that the Court dismiss Angeletti's hostile work environment claim on the basis of his race is **DENIED**.

F.    **Angeletti's Retaliation Claim**

A plaintiff establishes a *prima facie* case of retaliation by showing: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) there was a causal link between the protected activity and the adverse employment action. *Hernandez*, 670 F.3d at 657 (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)).

In support of the motion, Defendants argue that Angeletti cannot point to sufficient evidence to establish that the actions taken by Defendants were adverse employment actions. An adverse employment action is one that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White v.* 548 U.S. 53, 68 (2006); *Hernandez*, 670 F.3d at 657.

In opposition, Angeletti does not address Defendants' argument that Defendants' actions were not adverse employment actions. Instead, Angeletti points to his deposition in which he testified that, after he filed his Equal Employment Opportunity Commission Charge of Discrimination, Gerald R. Lane continued to call him "motherfucker," "sonofabitch," and "dago." (Doc. 73-5, pp. , 35, 37.) Angeletti also points to those portions of his deposition in which he testified that Gerald R. Lane told him that he "will never see a fucking dime" of his money and repeatedly "threatened" him that he "better sell some fucking cars." (Doc. 73-5, pp. 35, 37, 51.) Angeletti also points to an April 27, 2012 letter from counsel for Angeletti to counsel for Defendants. (Doc. 73-16.) Specifically, Angeletti points to counsel's allegation that on that date Angeletti "was called a motherfucker" upon arrival to the daily morning meeting, thrown out of the meeting in front of everyone, told he was late, and docketed $100.00 from his pay for being late to the meeting." (Doc. 73-16, p. 1.)

Even viewing the facts in the light most favorable to Angeletti, the Court finds that he has not pointed to sufficient evidence to create a dispute of material fact as to

the second prong of a *prima facie* case of retaliation. *King v. Louisiana*, 294 F. Appx. 77, 85 (5th Cir. 2008) (holding that "allegations of unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute adverse employment actions as . . . retaliation"); *Grice v. FMC Techs., Inc.*, 216 F. Appx. 401, 407 (5th Cir. 2007) (holding that unjustified reprimands are considered "trivial" and not materially adverse in the retaliation context); *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. Appx. 437, 442 (5th Cir. 2007) (holding that a written disciplinary warning for insubordination and being argumentative would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination"); *Gallentine v. Hous. Auth.*, 919 F. Supp. 2d 787, 807 (E.D. Tex. 2013) (holding that a write-up, which was classified as a verbal warning, cannot satisfy the second prong of a *prima facie* case of retaliation). Further, the Court concludes that a one-hundred dollar decrease in pay is *not* sufficient enough to dissuade a reasonable worker from making or supporting a charge of discrimination. *Contra LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007) (holding that a two-day suspension without pay was an adverse employment action because it "might have dissuaded a reasonable employee from making a charge of discrimination"). Indeed, Angeletti has failed to cite to any binding case law that would require the Court to conclude otherwise. Accordingly, Defendants' request that the Court dismiss Angeletti's retaliation claim is **GRANTED**.

## G.    Angeletti's Constructive Discharge Claim

"Constructive discharge occurs when an employee has quit [his] job under circumstances that are treated as an involuntary termination of employment." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). To succeed on his constructive discharge claim, Angeletti must show "working conditions . . . so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Hypolite v. City of Houston*, 493 Fed. Appx. 597, 607-608 (5th Cir. 2012) (quoting *Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 674 F.3d 448, 453 (5th Cir. 2012)). There must be "a greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." *Id.* (quoting *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011)). Therefore, courts in the Fifth Circuit consider aggravating factors including: (1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Id.* (citing *Nassar*, 674 F.3d at 453).

In support of the motion, Defendants argue that each of the factors weighs against Angeletti's claim that he was constructively discharged. Defendants further contend that evidence of badgering, harassment, or humiliation, without more, is insufficient to establish a constructive discharge claim.

In opposition, Angeletti argues that he felt compelled to resign after a verbal alteration with Gerald R. Lane. In support of this argument, Angeletti points to his deposition, during which he testified about the verbal altercation between he, three African American coworkers, and Gerald R. Lane, and the level of "hostility" at the car dealership. (Doc. 68-6, pp. 88-91, 153.) He also points to his testimony about the two occasions during which Gerald R. Lane displayed his gun to Angeletti. (Doc. 68-6, pp. 49-50.) According to Angeletti, he "feared for his life" because he didn't know [what] [Gerald R. Lane] would do." (Doc. 68-6, pp. 49-50.) However, Angeletti fails to point to evidence that Gerald R. Lane physically assaulted or threatened to physically assault Angeletti, or that Gerald R. Lane displayed his gun on the day of the verbal altercation, or that Gerald R. Lane threatened to shoot Angeletti.

As noted above, to survive summary judgment, Angeletti must present evidence of working conditions even more egregious than those required to establish a hostile working environment. *Hypolite*, 493 Fed. Appx. at 607-608. Based on the evidence presented, the only factor Angeletti can rely on to meet the reasonable employee test is "badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation." *Id.* While the Court finds that the evidence presented would permit a fact finder to conclude that Gerald R. Lane's conduct was unprofessional and boorish, and that the working conditions created by Gerald R. Lane following Angeletti's EEOC Charge were unpleasant, it does not amount to conduct or conditions so intolerable that a reasonable employee would feel compelled to resign. Further, Angeletti's subjective belief that he "had to leave or risk bodily harm," without more,

is insufficient to meet the extremely high standard for a constructive discharge claim. *Compare Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. 2009) (concluding that evidence that African-American plaintiff's co-workers repeatedly displayed a noose and threatened violence qualifies as "egregious for purposes of constructive discharge"), *and Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1190-91, 1199 (7th Cir. 1992) (concluding that considerable evidence supported the district court's finding of constructive discharge where the plaintiff's boss constantly made racist comments, brandished gun, took photograph of himself holding gun to the plaintiff's head, and passed that photo around office), *and Brooms v. Regal Tube Co.*, 881 F.2d 412, 417, 423 (7th Cir. 1989) (holding that constructive discharge was established after "repeated instances of grossly offensive conduct and commentary" that culminated in an incident where a coworker showed the plaintiff a racist pornographic photograph, told her that she was hired to perform the task depicted in the photograph, grabbed the plaintiff and threatened to kill her), *with Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991-92 (5th Cir. 2008) (employee failed to meet the reasonable employee test where she claimed that she was not compensated appropriately, not given career development opportunities, not allowed to accrue compensatory time, harassed and discriminated against, and "excluded from prestigious retreats"). Indeed, Angeletti has failed to cite to any binding case law that would require the Court to conclude otherwise. Accordingly, Defendants' request that the Court dismiss Angeletti's constructive discharge claim is **GRANTED**.

## H.    Angeletti's Assault and Battery Claims

In support of the motion, Defendants argue that Angeletti cannot point to sufficient evidence to establish his claims for assault and battery. Angeletti failed to present any argument, or point to any evidence, in opposition to Defendants' argument regarding his assault claim. Accordingly, the Court shall limit its analysis to Angeletti's claim for battery.

In Louisiana, a battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact . . ." *Landry v. Bellanger*, 851 So. 2d 943, 949 (La. 2003) (citing *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987)). According to the Louisiana Supreme Court, the defendant's intention need not be malicious nor need it be an intention to inflict actual damage. *Id.* (citing *Caudle*, 512 So. 2d at 391). It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other's consent. *Id.* (citing *Caudle*, 512 So. 2d at 391).

Here, Angeletti argues that Gerald R. Lane intended to touch him on his face, backside, and genital area and that the touching was offensive. In support of his argument, Angeletti points to his deposition testimony, in which he testified that Gerald R. Lane touched his face and pinched his cheeks to check if he had shaved, patted him on the backside, and tapped him in the genital area. (Doc. 73-5, pp. 27, 28, 33, 34, 47; Doc. 68-6, pp. 62-63.) He also points to the deposition testimony of white and non-white coworkers, who testified that Gerald R. Lane touched the faces of African American employees, including Angeletti, to see if they had shaved, and the

testimony of a white coworker who testified that Gerald R. Lane would "slap [sales employees] on the backside" and do "nut checks where [he] would take a swat basically at a man's penis area." (Doc. 73-6, pp. 2-4; 73-7, p. 5; Doc. 73-13, pp. 2-3, 5.)

In support of the motion, Defendants argue that Angeletti cannot point to sufficient evidence to establish that Gerald R. Lane intended to make a harmful or offensive contact. However, the defendant need not form the intention that his actions be harmful or offensive. *Molette v. City of Alexandria*, No. CV04-0501-A, 2005 U.S. Dist. LEXIS 44043, at *23 (W.D. La. Sept. 30, 2005) (citing Landry, 851 So.2d at 949. Rather, in the tort liability analysis, the element of intent is satisfied if the actor desires to "bring about a result which will invade the interests of another in a way that the law forbids. The defendant may be liable although intending nothing more than a good-natured practical joke, or honestly believing that the act would not injure the plaintiff, or even though seeking the plaintiff's own good." *Caudle*, 512 So. 2d at 391.

Viewing the facts in the light most favorable to Angeletti, the Court finds that he has pointed to sufficient evidence to establish a dispute of material fact from which a jury could conclude that a battery was committed. Accordingly, Defendants' request that the Court dismiss Angeletti's assault and battery claims is **GRANTED IN PART** and **DENIED IN PART**.

## I.  Angeletti's Intentional Infliction of Emotional Distress Claim

In Louisiana, in order to recover for intentional infliction of emotional distress, a plaintiff must establish: "(1) that the conduct of the defendant was extreme and

outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). In support of the motion, Defendants argue that Angeletti cannot point to sufficient evidence to support his claim.

In opposition, Angeletti failed to point the Court to specific evidence to support each prong of his intentional infliction of emotional distress claim. Instead, Angeletti generally argues that where there is a question as to whether there was pattern of harassment, summary judgment is inappropriate. However, Angeletti's bare assertion that there are genuine disputes of material fact, without more, is insufficient. Even assuming, *arguendo*, that the evidence in the record establishes that Gerald R. Lane's conduct was extreme and outrageous, Angeletti has failed to point the Court to any evidence whatsoever to establish that the emotional distress suffered by him rises to the level of severe distress required to support such a claim, or that Gerald R. Lane desired to inflict severe emotional distress upon Angeletti or knew that severe emotional distress would be certain or substantially certain to result from his conduct toward Angeletti. Accordingly, the Court finds that Angeletti has failed to present sufficient evidence to establish a dispute of material fact from which a jury could conclude that Gerald R. Lane is liable for intentional infliction of emotional distress. As such, Defendants' request that the Court dismiss Angeletti's intentional infliction of emotional distress claim is **GRANTED**.

IV.    Conclusion

Accordingly,

**IT IS ORDERED** that **Defendants' Motion for Summary Judgment (Doc. 68)** is **GRANTED IN PART** and **DENIED IN PART**.

- Defendants' request that the Court dismiss Angeletti's federal and state law discrimination claims against Gerald R. Lane, or any other individual supervisor or fellow employee, is **GRANTED**. Accordingly, Angeletti's federal and state law discrimination claims against Gerald R. Lane, or any other individual supervisor or fellow employee, are **DISMISSED**.

- Defendants' request that the Court dismiss Angeletti's claim that he was subjected to a hostile work environment claim on the basis of his sex is **GRANTED**. Accordingly, Angeletti's hostile work environment claim on the basis of his sex is **DISMISSED**.

- Defendants' request that the Court dismiss Angeletti's claim under La. R.S. § 23:631 is **GRANTED**. Accordingly, Angeletti's claim under La. R.S. § 23:631 is **DISMISSED**.

- Defendants' request that the Court dismiss Angeletti's hostile work environment claim on the basis of his national origin is **DENIED**.

- Defendants' request that the Court dismiss Angeletti's hostile work environment claim on the basis of his race is **DENIED**.

- Defendants' request that the Court dismiss Angeletti's retaliation claim is **GRANTED**. Accordingly, Angeletti's retaliation claim is **DISMISSED**.

- Defendants' request that the Court dismiss Angeletti's constructive discharge claim is **GRANTED**. Accordingly, Angeletti's constructive discharge claim is **DISMISSED**.

- Defendants' request that the Court dismiss Angeletti's assault claim is **GRANTED**. Accordingly, Angeletti's assault claim is **DISMISSED**.

- Defendants' request that the Court dismiss Angeletti's battery claim is **DENIED**.

- Defendants' request that the Court dismiss Angeletti's intentional infliction of emotional distress claim is **GRANTED**. Accordingly, Angeletti's intentional infliction of emotional distress claim is **DISMISSED**.

Baton Rouge, Louisiana, this _19th_ day of September, 2014.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**